[No. 58579-2. En Banc. February 25, 1993.]

THE STATE OF WASHINGTON, *Appellant*, v. ALLEN DOUGLAS HUTSELL, *Respondent*.

*Donald C. Brockett, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for appellant.

*Michael C. Beegle,* for respondent.

DOLLIVER, J. — The State of Washington challenges the trial court's use of respondent/defendant Allen Hutsell's cocaine dependence as a mitigating factor in setting an

exceptional sentence below the standard range. We granted review pursuant to RAP 4.2(a) and now reverse.

In July 1991, Hutsell pleaded guilty to one count of forgery. The prosecutor agreed to dismiss a second count of forgery and to make no sentence recommendation. Based on Hutsell's offender score of 7, the standard sentencing range was 14 to 18 months. The trial court imposed an exceptional sentence of 12 months, consisting of 6 months' total confinement, 3 months' partial confinement at an inpatient drug treatment facility, and 3 months' home detention while completing an outpatient treatment program.

Under the Sentencing Reform Act of 1981 (SRA), an exceptional sentence requires "substantial and compelling" justifications. RCW 9.94A.120(2). The SRA enumerates mitigating circumstances presumptively satisfying this "substantial and compelling" standard. RCW 9.94A.390 ("illustrative factors which the court may consider in the exercise of its discretion").

■ To reverse an exceptional sentence, an appellate court must find: (1) under the "clearly erroneous" standard, the reasons for departure from the presumptive range are not supported by the record; (2) as a matter of law, the stated reasons do not justify the exceptional sentence; *or* (3) under the "abuse of discretion" standard, the sentence imposed is clearly excessive or too lenient. *E.g., State v. Dunaway,* 109 Wn.2d 207, 218, 743 P.2d 1237, 749 P.2d 160 (1987); *see* RCW 9.94A.210(4).

In support of Hutsell's exceptional sentence, the trial court entered the following findings of fact:

1. Defendant's ability to appreciate the wrongfulness of his actions was diminished by defendant's use of cocaine.
2. Defendant's use of cocaine was involuntary because of defendant's addiction to cocaine.

Although not specifically stated, the trial court evidently relied on RCW 9.94A.390(1)(e), which enumerates the following mitigating circumstance:

> The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, was significantly impaired (*voluntary use of drugs or alcohol is excluded*).

(Italics ours.) On appeal, the State argues: (1) the record does not support the trial court's factual findings because it contains no evidence that Hutsell was intoxicated at the time of the offense or that Hutsell's offense was linked to his cocaine dependence; and (2) an addict's use of cocaine is voluntary, and thus, not an appropriate mitigating factor under RCW 9.94A.390.

For sentencing purposes, the State attempts to limit consideration of psychoactive substance use to instances in which the defendant was intoxicated at the time of the offense. We believe this view ignores the nature of psychoactive substance dependence. Dependence is a mental disorder, distinct from the direct physiological effects of psychoactive substance use, *i.e.*, intoxication and withdrawal. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 165 (3d rev. ed. 1987) (DSM-III-R). Dependence has nine characteristic symptoms, three of which are necessary for diagnosis. DSM-III-R, at 166-67. Some of these symptoms include: unintended excessive substance use (*e.g.*, intending to take only one drink, but nevertheless drinking until severely intoxicated), unsuccessful efforts to reduce or control substance use, preoccupation with activities necessary to obtain and pay for the substance (*e.g.*, theft), and persistent use despite recognition of the resulting physical, psychological, and social problems. DSM-III-R, at 166-68.

In its first finding of fact, the trial court concluded Hutsell's judgment was impaired by his "use of cocaine". We find the trial court's word choice ambiguous because it fails to distinguish between dependence and intoxication. To the extent the trial court intended to rule Hutsell's dependence on cocaine, not his intoxication, impaired his "capacity to appreciate the wrongfulness of his conduct or to conform his

conduct to the requirements of the law," RCW 9.94A.390-(1)(e), we conclude the trial court's finding is amply supported by the record and the generally accepted principles relating to psychoactive substance dependence.

■■ The question remains, however, whether as a matter of law impairment due to psychoactive substance dependence justifies an exceptional sentence below the standard range. Hutsell proposes two statutorily defined mitigating circumstances to support his exceptional sentence. The first involves RCW 9.94A.390(1)(c), which enumerates as a mitigating circumstance:

> The defendant committed the crime under duress, coercion, threat, or compulsion insufficient to constitute a complete defense but which significantly affected his or her conduct.

Hutsell argues that he was operating under a "compulsion" caused by his dependence on cocaine and that this compulsion constitutes an appropriate mitigating factor under RCW 9.94A.390(1)(c). We do not agree. Under the doctrine of ejusdem generis, we must interpret the term "compulsion" in a manner consistent with the other words in the sequence, *i.e.*, duress, coercion, and threat. *See, e.g., Dean v. McFarland*, 81 Wn.2d 215, 221, 500 P.2d 1244, 74 A.L.R.3d 378 (1972). These terms connote the influence of an outside force. *See State v. Rogers*, 112 Wn.2d 180, 184, 770 P.2d 180 (1989); *cf.* RCW 9A.16.060 (defense of duress requires compulsion by another). Thus, we hold RCW 9.94A.390(1)(c) does not encompass compulsive disorders such as psychoactive substance dependence.

■■ Hutsell also invokes RCW 9.94A.390(1)(e). The Legislature specifically excluded from consideration as a mitigating factor under this subsection impairment due to "voluntary use of drugs or alcohol". RCW 9.94A.390(1)(e). In its second finding of fact, the trial court ruled this "voluntary use" exclusion does not apply to an addict's use of psychoactive substances. This is a conclusion of law and we will treat it accordingly. *See Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986) ("A conclusion of law erroneously described as a finding of fact is reviewed as a conclu-

sion of law."); *Para-Medical Leasing, Inc. v. Hangen*, 48 Wn. App. 389, 397, 739 P.2d 717 ("If a term carries legal implications, a determination of whether it has been established in a case is a conclusion of law.") (citing *Woodruff v. McClellan*, 95 Wn.2d 394, 396, 622 P.2d 1268 (1980)), *review denied*, 109 Wn.2d 1003 (1987).

The State contends our holding in *State v. Allert*, 117 Wn.2d 156, 815 P.2d 752 (1991) sufficiently addresses whether RCW 9.94A.390(1)(e) excludes impairment due to substance dependence. In *Allert*, we said:

> There is no indication in RCW 9.94A.390(1)(e), or in the legislative history of that enactment, that the Legislature intended intoxication by an alcoholic to be other than "voluntary intoxication". . . . If the Legislature intends that intoxication by an alcoholic be treated differently for sentencing purposes than intoxication by one not an alcoholic, then that decision is better suited to the legislative process wherein the psychological characteristics of compulsive diseases can be studied. . . .

*Allert*, 117 Wn.2d at 167. At sentencing, Hutsell attempted to limit *Allert*, arguing the holding applied only to alcohol use, and not to drug use. Because the trial court apparently found this argument persuasive, we must address it.

█ RCW 9.94A.390(1)(e) excludes from consideration as a mitigating factor in sentence determinations impairment due to voluntary use of *either* drugs or alcohol. Thus, to the extent *Allert* applies to alcohol, it must also apply to cocaine and other psychoactive substances. Even were we to distinguish between alcohol and cocaine, we would be less inclined to grant leniency for use of a substance, the possession, manufacture, or delivery of which constitutes a criminal act. *See* RCW 69.50.401. Alcohol, on the other hand, is a legally obtainable substance, sold by the State. Thus, we refuse to distinguish *Allert* on the basis of substance class.

█ Instead, we read Hutsell's arguments as inviting us to reexamine our holding in *Allert*. In *Allert*, we recognized the ambiguity of the phrase "voluntary use" as it applies to drugs and alcohol. In resolving this ambiguity, we must construe the statute to best advance the legislative purpose. *E.g., Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812

P.2d 858 (1991). To do so, we must in this case consider the provisions of the Washington Criminal Code, RCW Title 9A, relating to intoxication. RCW 9A.16.090 provides:

> No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such mental state.

RCW 9A.16.090 was enacted in 1975; its predecessor contained equivalent language. *See* Laws of 1909, ch. 249, § 6, p. 891 (codified at RCW 9.01.114, repealed 1975). RCW 9A.16-.090 prohibits the use of voluntary intoxication as a defense; as a corollary, however, involuntary intoxication does constitute an allowable defense. 13A R. Ferguson, Jr. & S. Fine, Wash. Prac., *Criminal Law* § 2504, at 332 (1990). Because involuntary intoxication may absolve the defendant of any criminal responsibility, we narrowly construe the term "involuntary" and conversely assign "voluntary" a definition broader than its colloquial meaning. *Cf. State v. Crenshaw*, 98 Wn.2d 789, 793, 659 P.2d 488 (1983) (insanity acts as a complete defense and therefore requires a rigorous test).

In *Seattle v. Hill*, 72 Wn.2d 786, 435 P.2d 692 (1967), *cert. denied*, 393 U.S. 872 (1968), we defined "voluntary intoxication" as intoxication not caused by force or fraud. *Seattle*, 72 Wn.2d at 794, 797-98, 802. We presume the Legislature knew and adopted this interpretation of the term "voluntary" when it later recodified the intoxication provision. *See Friends of Snoqualmie Vly. v. King Cy. Boundary Review Bd.*, 118 Wn.2d 488, 496, 825 P.2d 300 (1992). Likewise, in excluding voluntary use of drugs or alcohol as a mitigating circumstance under RCW 9.94A.390(1)(e) (enacted in 1984), the Legislature is deemed to have intended the word "voluntary" to possess the same meaning. *Cf. Cowles Pub'g Co. v. State Patrol*, 109 Wn.2d 712, 722, 748 P.2d 597 (1988) ("[W]hen similar words are used in different parts of a statute, the meaning is presumed to be the same throughout.' ") (quoting

*Booma v. Bigelow-Sanford Carpet Co.*, 330 Mass. 79, 82, 111 N.E.2d 742 (1953)).

 Thus, as in *Allert*, we cannot escape the conclusion RCW 9.94A.390(1)(e) excludes consideration of the unforced, and not fraudulently induced, use of drugs or alcohol as a mitigating factor, regardless of whether the defendant suffers from substance dependence. In so holding, we interpret the phrase "use of drugs or alcohol" as encompassing both intoxication and dependence. The Legislature specifically employed the term "intoxication" in RCW 9A.16.090, but adopted the phrase "use of drugs or alcohol" in RCW 9.94A-.390(1)(e). In using different language, we believe the Legislature intended impairment due to "use of drugs or alcohol" to connote both the physiological (intoxication and withdrawal) and the psychological (dependence) effects of such substances. *Cf. State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991) (" ' "[W]here the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent." ' ") (quoting *In re Swanson*, 115 Wn.2d 21, 27, 804 P.2d 1 (1990)).

Our interpretation is consonant with the overall legislative scheme. The mitigating circumstances enumerated in RCW 9.94A.390 represent failed defenses. As one commentator explains:

> The Guidelines contain a number of mitigating factors applicable in situations where circumstances exist which tend to establish defenses to criminal liability but fail. In all these situations, if the defense were established, the conduct would be justified or excused, and thus would not constitute a crime at all. The inclusion of these factors as mitigating factors recognizes that there will be situations in which a particular legal defense is not fully established, but where the circumstances that led to the crime, even though falling short of establishing a legal defense, justify distinguishing the conduct from that involved where those circumstances were not present. Allowing variations from the presumptive sentence range where factors exist which distinguish the blameworthiness of a particular defendant's conduct from that normally present in that crime is wholly consistent with the underlying principle. Certainly the fact that the substantive law treats

these circumstances as complete defenses establishes the legitimacy of their use in determining relative degrees of blameworthiness for purposes of imposing punishment.

(Footnote omitted.) D. Boerner, *Sentencing in Washington* 9-23 (1985). Thus, we believe the Legislature intended presumptively to authorize consideration of alcohol or drug use as a mitigating factor only in circumstances in which the use might have formed the basis of a defense, *i.e.*, when the defendant's intoxication at the time of the offense was induced by fraud or force.

We recognize the potential objection that our interpretation of the legislative scheme may discourage plea bargaining. We are not persuaded that such result necessarily follows. Under RCW 9A.16.090, a defendant may introduce evidence of either voluntary or involuntary intoxication, which the trier of fact may consider in assessing whether the defendant had the requisite mens rea for the offense, criminal negligence excluded. *State v. Coates*, 107 Wn.2d 882, 891-93, 735 P.2d 64 (1987). Because the burden remains with the prosecution to prove the elements of the offense beyond a reasonable doubt, a guilty verdict indicates the trier of fact found the defendant capable of forming the requisite mens rea. In that event, we find no fault with precluding consideration of the intoxication as a mitigating circumstance in sentencing.

The situation is different, however, when the defendant chooses to plead guilty to the offense. In so pleading, the defendant acknowledges the mental state necessary for the offense, and waives the opportunity to present at trial any claims of diminished capacity. Because the sentencing scheme ignores diminished capacity claims, an objection may arise that the scheme discourages plea bargaining. We do not find this problematic because, in pleading guilty, the defendant often benefits from a reduced charge or the dismissal of other counts or both. The process of plea bargaining thereby minimizes the defendant's seriousness or offender scores, and consequently reduces the standard range. Thus, we do not believe the scheme unduly discourages plea bargaining;

but, even were that the case, the Legislature more appropriately bears the responsibility of weighing the policy interests and devising the optimum sentencing scheme.

■ Therefore, we hold the reasons upon which the trial court based Hutsell's exceptional sentence do not justify a departure from the standard range as a matter of law. Hutsell nevertheless argues his exceptional 12-month sentence is justified because it approximates a standard range (14- to 18-month) sentence, considering potential time credit reductions for good behavior under RCW 9.95.070, and therefore furthers the SRA's goals of proportionate and commensurate punishment. *See* RCW 9.94A.010(1), (3). This argument lacks merit. In reviewing an exceptional sentence, we compare the purposes of the SRA against the *reasons* given by the sentencing court, not the duration of the sentence. *See State v. Estrella*, 115 Wn.2d 350, 357, 798 P.2d 289 (1990). An appellate court will rarely reverse an exceptional sentence on the basis of its length alone. *State v. Clinton*, 48 Wn. App. 671, 678, 741 P.2d 52 (1987) (citing *State v. Armstrong*, 106 Wn.2d 547, 553, 723 P.2d 1111 (1986) (Goodloe, J., dissenting)). Likewise, duration by itself does not adequately support an exceptional sentence. The sentencing court must provide "substantial and compelling" justifications for departing from the standard range. RCW 9.94A.120(2). We find no such justifications in the case before us. *Cf. State v. Rogers*, 112 Wn.2d 180, 185, 770 P.2d 180 (1989) ("We appreciate that RCW 9.94A.390 lists factors . . . which are illustrative and not exclusive reasons for exceptional sentences. However, when the court specifically cites the factor upon which it relied, the findings must meet the test of that particular factor.").

■ Hutsell also contends his exceptional sentence furthers the SRA's goals of rehabilitation and frugal use of state resources. *See* RCW 9.94A.010(5), (6). Initially, we find Hutsell's "frugal use" argument unpersuasive because the record indicates Hutsell received welfare assistance to pay for the treatment programs outlined in his exceptional sentence. See Verbatim Report of Proceedings (Sept. 3, 1991), at 36. We also reject Hutsell's rehabilitation argument. Under the

SRA, a sentencing court may impose alternatives to total confinement only for those offenders with sentences of 1 year or less. RCW 9.94A.380. In formulating the sentencing grid, the Legislature determined which seriousness and offender scores warranted sentences of more than 1 year, presumably considering the provisions for discretionary time credit reductions. In addition, the Legislature established separate sentencing provisions for first-time offenders, under which the court may require treatment as a condition of community supervision. RCW 9.94A.120(5)(b). Thus, the Legislature has defined the necessary conditions for imposing treatment as an alternative to total confinement, and has expressed less of a commitment to rehabilitation than under the prior indeterminate sentencing system. *See Estrella*, 115 Wn.2d at 357-58.

We understand the current frustration with the dearth of sentencing options, but as the Court of Appeals explained in *State v. Harper*, 62 Wn. App. 69, 813 P.2d 593 (1991), *review denied*, 118 Wn.2d 1017 (1992):

[N]o matter how persuasive those arguments may be as a matter of policy, they must be addressed to the Legislature and not to the courts. As was the case in dealing with sex offenders, when the Legislature is persuaded that drug treatment is desirable it will affirmatively authorize such sentencing. Our responsibility is to apply the SRA as written.

(Footnote omitted.) *Harper*, 62 Wn. App. at 78-79.

This case is reversed and remanded for further proceedings consistent with this opinion.

DORE, C.J., and UTTER, BRACHTENBACH, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.