[No. 38367-1-I. Division One. September 2, 1997.]

THE CITY OF DES MOINES, *Respondent*, v. PERSONAL PROPERTY IDENTIFIED AS $81,231 IN UNITED STATES CURRENCY, *Defendant*, COLEEN GRAY, *Appellant*.

---

*Antonio Salazar*, for appellant.

*Gary McLean, City Attorney*, and *Ha Thu Dao, Assistant*, for respondent.

KENNEDY, A.C.J. — Colleen Gray appeals the grant of summary judgment of forfeiture to the City of Des Moines of $81,231 in cash seized from Gray's home during a police health and safety check, after officers discovered over a

pound of cocaine in a bag claimed by Gray. Gray contends that the trial court erred in vacating the default judgment she obtained against the City and in continuing the forfeiture hearing past 90 days from the date she challenged the seizure. Gray further contends that summary judgment was not proper because the search of her apartment and the seizure of the money were unconstitutional. The City contends that the doctrine of collateral estoppel bars Gray from challenging the forfeiture on constitutional grounds because that issue was decided at a suppression hearing during her criminal trial. We hold that the trial court did not err in vacating the default judgment and in continuing the forfeiture hearing. We further hold that Gray is collaterally estopped from challenging the constitutionality of the search by the prior determination, following a suppression hearing in her criminal trial, that the search and seizure were constitutional. Accordingly, we affirm.

## FACTS

During a response to a health and safety call at Colleen Gray's condominium, Des Moines police discovered over a pound of cocaine and $81,231 in cash inside a tote bag that Gray asked to take with her to the hospital. Two days after the seizure of the cash and drugs, the City of Des Moines instituted forfeiture proceedings in Des Moines Municipal Court under ch. 69.50 RCW by serving Gray with a Notice of Seizure and Intended Forfeiture. Gray timely responded and requested that a hearing be held within 90 days of the seizure.[1] A hearing date was set for September 20, 1995, which was within 90 days of the date of seizure.

On the day of the hearing, Gray filed in King County Superior Court a petition to remove the matter to superior

---

[1]In her response, Gray advised the City that she was considering filing a petition to remove the matter to Superior Court, given the amount of money at issue.

court on grounds that the total value of the seized property exceeded the jurisdictional limits of the municipal court ("removal action"). The City had 20 days to appear in the removal action. Instead of answering Gray's petition or filing a notice of appearance in the removal action, however, the City, on October 18, 1995, filed in superior court a summons and complaint for civil forfeiture of Gray's property corresponding to its original Notice of Seizure and Intended Forfeiture ("forfeiture action"). Trial was set for January 10, 1996, within 90 days of the filing of the complaint. Gray timely appeared in the forfeiture action.

One day after appearing in the forfeiture action, Gray filed a motion for default judgment in the removal action on the ground that the City had not timely filed a notice of appearance or answer to her petition for removal to superior court. She did not provide the City with notice of her motion. A commissioner of the superior court granted the motion and entered default judgment in Gray's favor.

Having obtained a default judgment in the removal action, Gray moved on December 20, 1995, for summary judgment in the forfeiture action, contending that the issue of who was entitled to the money had already been decided in her favor by default judgment and could not be reconsidered in any other proceeding. In response, the City moved for summary judgment on several grounds and moved to vacate the default judgment, arguing that it had never been served with notice of the motion for default judgment as required by CR 55(a)(3). The City, however, incorrectly filed the motion to vacate under the cause number for the forfeiture action instead of the removal action.

All three motions — Gray's for summary judgment, the City's for summary judgment, and the City's to vacate — were heard on January 9, 1996, by King County Superior Court Judge Larry Jordan. Judge Jordan determined that "[t]he [City's] motion to vacate should be heard and decided prior to ruling on the motions for summary judg-

ment." Accordingly, he continued the trial date from January 10, 1996, to April 8, 1996, over Gray's objection, consolidated the removal action and the forfeiture action under the cause number for the removal action, and directed both sides to file their motions under that number.

The City immediately re-filed its motion to vacate under the correct cause number. Judge Jordan heard and granted that motion on January 26, 1996, ordering the default judgment vacated "for lack of notice of the motion for default from [Gray] to the City."

The City then moved for summary judgment. Gray opposed summary judgment on the grounds that the City's motion was not timely brought and that the property had been seized in violation of her constitutional rights. Judge Richard Eadie heard and granted the City's motion on March 18, 1996. Judge Eadie adopted the findings and conclusion of Judge JoAnne Alumbaugh, at a suppression hearing held in Gray's criminal trial, that the search of Gray's apartment and the seizure of her property did not violate her constitutional rights.

Gray appeals.

## DISCUSSION

### I

Gray contends that the trial court erred in ruling that the default judgment should be vacated because Gray did not provide the City with notice of her motion for default judgment. The City was entitled to such notice only if it had "appeared" in the action. CR 55(a)(3) ("Any party who has not appeared before the motion for default and supporting affidavit[s] are filed is not entitled to a notice of the motion . . . ."). Gray contends that the City never "appeared" because it never filed a notice of appearance or answer in the removal proceeding, and argues that she was, therefore, not required to give the City any notice of her motion.

■ The decision whether to vacate a default judgment is within the trial court's discretion and will not be disturbed on review absent an abuse of that discretion. *Hardesty v. Stenchever*, 82 Wn. App. 253, 262, 917 P.2d 577, *review denied*, 130 Wn.2d 1005 (1996).

■ Default judgments are disfavored in the law; accordingly, the concept of "appearance" is construed broadly for purposes of CR 55. *Skilcraft Fiberglass, Inc. v. Boeing Co.*, 72 Wn. App. 40, 45, 863 P.2d 573 (1993) (citing *Gage v. Boeing Co.*, 55 Wn. App. 157, 161, 776 P.2d 991 (1989)). A party "appears" in an action when it "answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of [its] appearance." RCW 4.28.210. The methods set forth in RCW 4.28.210 for "appearing" in an action are not exclusive, however, and informal acts may constitute an "appearance." *Skilcraft*, 72 Wn. App. at 45. "Whether a party has 'appeared' . . . is generally a question of intention, as evidenced by acts or conduct, such as the indication of a purpose to defend or a request for affirmative action from the court, constituting a submission to the court's jurisdiction." (Some quotation marks omitted.) *Gage*, 55 Wn. App. at 161 (quoting Annotation, *What Amounts to "Appearance" Under Statute or Rule Requiring Notice, to Party Who Has "Appeared," of Intention To Take Default Judgment*, 73 A.L.R.3D 1250, 1254 (1976)). CR 55 was " 'intended to protect those parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit.' " *Gage*, 55 Wn. App. at 161 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Default judgments are normally viewed as proper only when the adversarial process has been halted because of an essentially unresponsive party. *Gage*, 55 Wn. App. at 160-61 (citing *Livermore*, 432 F.2d at 691).

In *Skilcraft*, this court found an appearance on the part of the defendant where the defendant's primary contrac-

tor, but not the defendant, filed a notice of appearance in the lawsuit. *Skilcraft*, 72 Wn. App. at 46. In *Gage*, an appearance was found despite the defendant's failure to formally appear in two appeals to the superior court, where the defendant had contested all of the plaintiff's claims at the administrative level. *Gage*, 55 Wn. App. at 163-64. Washington courts have also found appearances where the defaulting party: resisted a motion to convert a temporary restraining order into an injunction pending trial, *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 349 P.2d 1073 (1960); served a demand for security for costs on the opposing party, *Warnock v. Seattle Times Co.*, 48 Wn.2d 450, 452, 294 P.2d 646 (1956); served a notice of appearance on the opposing party but not on the court, *Tiffin v. Hendricks*, 44 Wn.2d 837, 271 P.2d 683 (1954); and served interrogatories on the opposing party. *State ex rel. Trickel v. Superior Court*, 52 Wash. 13, 100 P. 155 (1909).

██ ██ This is not a case where the City completely failed to respond to an action filed by Gray. Here, the City, not Gray, began the forfeiture action in the first place by filing its notice of intent to forfeit, giving Gray timely notice of the intended forfeiture, and arranging for a hearing within 90 days as was requested by Gray. These actions put Gray on notice of the City's intent to pursue forfeiture. In addition, when Gray filed her petition for removal to superior court, the City filed its summons and complaint in the forfeiture action and timely served Gray with notice of each within the 20-day time limit for responding to the petition in the removal action. The City's actions indicated a clear purpose to defend its suit. *Gage*, 55 Wn. App. at 161. We hold that the City constructively appeared in the removal action by filing and serving its own forfeiture action in superior court within the 20-day limit to respond to Gray's removal petition. The trial court correctly ruled that the City was entitled to no-

tice of the default motion and properly vacated the default judgment for Gray's failure to provide such notice.

## II

Gray also contends that the court erred in ruling that both parties' motions for summary judgment should not be considered until the motion to vacate was heard, and in continuing the trial for three months to allow that hearing to take place. She contends that she was entitled to a hearing, at the latest, within 90 days of the filing of the complaint in the forfeiture action, i.e., by January 10, 1996, and that the court violated RCW 69.50.505(3) by continuing the hearing beyond that date. We must decide whether a forfeiture action must be dismissed if a full adversarial hearing is timely scheduled but the hearing is subsequently continued for reasons that would justify a continuance in any other civil proceeding. We hold that dismissal is not required in such circumstances.

■ "A trial court's decision to grant or deny a continuance is reviewed for a manifest abuse of discretion." *City of Bellevue v. Vigil*, 66 Wn. App. 891, 892, 833 P.2d 445 (1992). An action constitutes an abuse of discretion if it was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *In re Detention of G.V.*, 124 Wn.2d 288, 295, 877 P.2d 680 (1994).

In *Tellevik v. 31641 W. Rutherford St.*, our Supreme Court, in addressing a challenge to the constitutionality of RCW 69.50.505, stated that "[c]laimants are entitled to a full adversarial hearing within 90 days if they contest the seizure" of property subject to forfeiture. 120 Wn.2d 68, 86, 838 P.2d 111, 845 P.2d 1325 (1992) (*Tellevik* I) (citing RCW 69.50.505(e)). In a subsequent decision, commonly referred to as *Tellevik* II, the Court confirmed that a 90-day limit exists. *Tellevik v. 31641 W. Rutherford St.*, 125 Wn.2d 364, 370, 884 P.2d 1319 (1994). The *Tellevik* II court dismissed the forfeiture action in that case because the State "ignored the clear and unambiguous language in *Tellevik*

I and waited nearly 6 months before *obtaining* a trial date" after the mandate in *Tellevik* I. *Id.* at 372.

█ We note that in *Tellevik* I, the Supreme Court ruled that the trial court erred in failing to grant a continuance to allow the governmental plaintiffs to complete discovery with respect to one of the litigants, Janet Pearson. *Tellevik* I, 120 Wn.2d at 91. In that case, the summons and complaint for forfeiture and related documents were served on April 13, 1990. After the defendants challenged the constitutionality of the forfeiture statute and Janet Pearson moved for summary judgment under the innocent owner provision of the statute, the government asked for more time to complete discovery with respect to Janet, pursuant to CR 56(f). *Id.* at 74-75. On September 5, 1990, some 5 months after the action was instituted, the trial court denied the government's request for a continuance and granted summary judgment to Janet. *Id.* at 75. The Supreme Court ruled that the trial court abused its discretion in denying the continuance under the circumstances set forth in the opinion: defense counsel had failed to provide informal discovery or to respond to formal requests for production; the location of a confidential informant was unknown until August of 1990; and the evidence sought was relevant and material to forfeiture issues relating to Janet Pearson. *Id.* at 90-91. The *Tellevik* I opinion clearly demonstrates that, when construing the statute to require an adversarial hearing within 90 days, the Supreme Court did not intend to suspend the normal rules of civil procedure in forfeiture cases.

Here, as in *Tellevik* I, there were valid reasons for continuing the summary judgment hearing. The premise of Gray's summary judgment motion was that she was entitled to summary judgment in the forfeiture action because she had obtained a default judgment in the removal action. Her summary judgment motion thus hinged on the validity of her default judgment. When the default judgment was found to be invalid, Gray's summary judg-

ment motion was rendered moot. Although the City made some procedural errors, including filing its first action in municipal court when the amount in controversy exceeded that court's jurisdiction, and filing its motion to vacate in the wrong proceeding, it was appropriately sanctioned for these errors by the imposition of financial terms in favor of Gray. Under these circumstances, the decision to continue the hearing in order to obtain a ruling on the merits on the motion to vacate was not an abuse of discretion.

## III

Gray challenges the trial court's grant of summary judgment to the City, contending that forfeiture was improper because the seizure of the money was in violation of her constitutional right to be free of unreasonable searches and seizures. Judge Eadie, in granting summary judgment, adopted the findings and conclusions entered by Judge Alumbaugh after the suppression hearing in Gray's criminal trial, in which Judge Alumbaugh found that the warrantless entry into Gray's home and warrantless search of her tote bag were reasonable and lawful under the circumstances and did not violate her constitutional rights. The City contends that because constitutionality of the search and seizure were determined by Judge Alumbaugh in the criminal trial, Gray is collaterally estopped from challenging the civil forfeiture on that basis. The City is correct.

 ██ "Generally, issues clearly decided against a defendant in a criminal action may be asserted on the basis of collateral estoppel in a later civil action." *Franklin v. Klundt*, 50 Wn. App. 10, 13, 746 P.2d 1228 (1987) (citation omitted). Collateral estoppel applies if (1) the issues presented in both cases are identical; (2) there was a final judgment on the merits in the first action; (3) the party against whom the doctrine is asserted was a party to or in privity with a party to the prior action; and (4) ap-

plication of the doctrine would not work an injustice against the party to whom it is applied. *State v. Barnes*, 85 Wn. App. 638, 650, 932 P.2d 669 (1997).

The Court of Appeals recently held that where the issue of the lawfulness of a seizure of property was decided in a criminal proceeding, the defendant is collaterally estopped from later raising that issue at a civil forfeiture hearing, as long as the four elements of collateral estoppel are met. *Barlindal v. City of Bonney Lake*, 84 Wn. App. 135, 142-45, 925 P.2d 1289 (1996). In *Barlindal*, criminal proceedings were brought against the defendant after police seized cash, drugs and firearms at his home. *Barlindal*, 84 Wn. App. at 137. Following a suppression hearing, the trial judge determined that the search of the defendant's home and the seizure of his property were unlawful. *Barlindal*, 84 Wn. App. at 137-38. Based on that ruling, the judge in a subsequent civil forfeiture proceeding ruled that the admissibility of the evidence had already been determined and dismissed the forfeiture proceeding. *Barlindal*, 84 Wn. App. at 138. The ruling was affirmed on appeal; collateral estoppel was proper because all four elements of collateral estoppel were met. *Id.*, 84 Wn. App. at 142-45.

Pursuant to *Barlindal*, as long as all four elements of collateral estoppel are met in Gray's case, Judge Alumbaugh's determination that the seizure was constitutional will serve to bar Gray from challenging the forfeiture on that ground. As to the first element of collateral estoppel, the issue in this case is identical to the issue in the suppression hearing. As to the third element, although the parties are not the same, in that the State prosecuted Gray in the criminal proceeding whereas the City of Des Moines is the plaintiff in this action, the State and City are in privity within the meaning of the "same parties" factor. *See Barlindal*, 84 Wn. App. at 143-44 (privity demonstrated where a county and city had a mutual interest and shared a common purpose in the successful prosecution of the defendant and forfeiture of his possessions). As

to the fourth element, "[a]pplication of the doctrine [of collateral estoppel] works no injustice where the party being estopped had an opportunity in the first proceeding to present evidence and arguments to the trial court on the issue[.]" *Id.* at 144 (citation omitted). Gray had an opportunity to present evidence and arguments at the suppression hearing; therefore, it would not work an injustice to apply the doctrine to her.

■■■ As to the second element, finality, the *Barlindal* court observed that the criminal proceeding in that case ended with a final judgment in that "the suppression order was not appealed." *Barlindal*, 84 Wn. App. at 142. Gray timely appealed the denial of her suppression motion in a separate appeal, which is pending as of the time of this writing. We do not think that the *Barlindal* court meant to hold that the trial court's judgment was final *only* because it was not appealed. Rather, the opinion appears to reflect the facts in that particular case. The rule in criminal cases is the same as in civil cases and is well explained in *Lejeune v. Clallam County*, 64 Wn. App. 257, 823 P.2d 1144 (1992). In *Lejeune*, the court held that a judgment becomes final for res judicata purposes at the beginning, not the end, of the appellate process, although res judicata can still be defeated by later rulings on appeal. *Lejeune*, 64 Wn. App. at 265-66. *See also Winchell's Donuts v. Quintana*, 65 Wn. App. 525, 530, 828 P.2d 1166 (1992); RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. f (1982) ("[A] judgment otherwise final remains so despite the taking of an appeal"). Although *Lejeune* dealt with res judicata, the principles are the same with respect to collateral estoppel.

The policy underlying this rule is that a party is entitled to one but not more than one fair hearing. *Lejeune*, 64 Wn. App. at 266. A party who loses at trial may appeal, and if she prevails on appeal the resultant rehearing will have been the first fair hearing. *Id.* While the appeal is pending, however, she is precluded by res judicata from starting a new action at the trial court level in hopes of

obtaining a contrary result while the appeal is pending. *Id.* Similarly, with collateral estoppel, a party is precluded from relitigating issues previously determined while an appeal as to those issues is pending. Although collateral estoppel may be later defeated if the trial court's judgment is overturned on appeal, in which event the claimant's remedy lies in CR 60, finality would be a long time in coming, given the many potential layers of appellate review, if it had to await the exhaustion of all possible appellate remedies. Instead, where a party has had a full opportunity to be heard, as Gray has, the trial court's judgment is presumptively correct and collateral estoppel applies even if an appeal is pending. Accordingly, Gray is collaterally estopped from challenging the trial court's grant of summary judgment to the City on the grounds of the constitutionality of the search of her home and the seizure of the money.

The challenged decisions of the trial court are affirmed.

COLEMAN and WEBSTER, JJ., concur.